Joe BRAWLEY *v.* STATE of Arkansas

CR 90-59                                         816 S.W.2d 598

Supreme Court of Arkansas
Opinion delivered October 7, 1991
[Supplemental Opinion on Denial of Rehearing
November 25, 1991.*]

*Glaze, J., concurs.

*Henry J. Swift*; and *Sloan, Rubens & Peeples*, by: *Kent J. Rubens*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellant, Joe Brawley, was convicted of murder and sentenced to life imprisonment in connection with the shooting death of his stepfather-in-law, Ray Tittle. He was arrested at the scene of the shooting on May 3, 1988. The evidence showed he had been involved in an on-going altercation with his estranged wife throughout the day, and the couple had exchanged threats. At 9:00 p.m. they were involved in a scuffle at a liquor store broken up by a police officer called to the scene. Brawley was obviously under the influence of intoxicants at that time and was told by the officer to go home. Instead he followed his wife and son to the home of her parents and waited outside in his truck with a 30.06 rifle. When she and her stepfather came out of the house to obtain items from her car

Brawley fired in their direction. The bullet struck Mr. Tittle who fell injured behind the car. Brawley's wife ran into the home where her mother was in the process of calling the police. Brawley broke into the house with the rifle. The two women grabbed the gun, and they were all struggling for it when the police arrived. Brawley and the gun were taken into custody. Before being taken away in an ambulance, Mr. Tittle identified Brawley as his assailant. Brawley admitted firing the fatal shot in a statement given shortly after his arrival at the county jail. Some two hours later a blood alcohol test was administered, and Brawley's blood alcohol measured .11%.

On September 27, 1988, Brawley filed a motion requesting a psychiatric evaluation. He could not make bail and had been held in custody since his arrest. The Court granted the request, and an appointment was made for Brawley at the George Jackson Mental Health Center for October 5, 1988. Brawley was not taken to the appointment. A second appointment was set for October 28, 1988. Again, he was not taken to meet the appointment. He was not taken for an evaluation until May 9, 1989, and he was returned to jail on the same day. The report finding him competent for all purposes was received by the Court on July 24, 1989. Brawley remained incarcerated.

Before his trial on September 12, 1989, Brawley made an oral motion in chambers to dismiss the charges due to a violation of his right to a speedy trial. The motion was denied. He also asked the Court to suppress his confession on the ground that he could not, due to his intoxication, make a knowing and voluntary waiver of his rights. Both requests were renewed in a post-trial motion for new trial filed by new counsel. Following a hearing the Trial Court held that, because Brawley requested the psychiatric evaluation, the entire period of time between his request and the receipt of the report was excludable and that he was not too intoxicated to waive his rights and make a voluntary statement.

Brawley contends the Court erred in denying his motion to dismiss for violation of his right to a speedy trial and that the court erred in finding his custodial statements admissible. We affirm the conviction, as there was no violation of the speedy trial guarantee, and the totality of the circumstances indicates that the custodial statement was voluntarily made.

In accordance with our Rule 11(f), the record has been examined to determine the Court made no error prejudicial to the defendant.

## 1. Speedy trial

Brawley was arrested on May 3, 1988. He argues that he was entitled, pursuant to Ark. R. Crim. P. 28.1(c) and 28.2(a), to be brought to trial by May 3, 1989. Instead he was tried in September, approximately 132 days in excess of the one year period. He contends that, as he was not brought to trial within the speedy trial period set out in Ark. R. Crim. P. 28.1, the State had the burden to show that any delay was the result of Brawley's conduct or was otherwise legally justified. *McConaughy v. State*, 301 Ark. 446, 784 S.W.2d 768 (1990). At a hearing before trial and on the new trial motion the State argued the delay was the result of Brawley's request for a psychiatric examination.

We have held that under Ark. R. Crim. P. 28.3(a), a period of delay resulting from an examination and hearing on the competency of the defendant is excludable. *Nelson v. State*, 297 Ark. 58, 759 S.W.2d 215 (1988). In the case now before us, the motion granting the evaluation was entered on September 27,1988, and the report was filed on July 24, 1989. That is the period the Trial Court excluded. Brawley argues that the period of 9 and ³/₄ months from the granting of the request to receipt of the report is not excludable because he was not responsible for the fact that he missed his appointment set for October 5, 1988. He argues that the burden of justifying the delay beyond that date shifts back to the State as he was incarcerated at that time and had no control over the matter of keeping the appointment. He points out that there is no explanation offered for the failure of the State to ensure that he arrived at his appointment.

In response to this argument the State asserts that as the oral motion was not made a part of the record and this specific argument was not included in the motion for new trial it is waived and should not be considered. It is clear from the reconstructed record that the Trial Court found to the contrary and ruled that the argument was made in the pretrial motion and again in the new trial motion.

 As there is no procedural bar to consideration of this

issue, we proceed to consider the argument that the State did not meet its burden by merely raising the period after the motion for psychiatric examination as an excludable period. Brawley's argument continues that once he presented proof that the appellant missed the scheduled appointments, and the Trial Court found that the delay was not attributable to him personally, the burden shifted back to the State to come forward with an explanation. The literal language of Rule 28.3(a) states simply that the period required by a competency examination is excluded. Brawley cites no authority for his assertion that the burden should shift back to the State, and we are not persuaded by his argument.

## 2. Suppression of the statement

Brawley argues the blood alcohol test administered some two hours after he gave his statement, and showing that his blood contained .11 % alcohol, showed he was too intoxicated to waive his rights voluntarily and intelligently or to make a statement.

All the officers involved in his arrest and in the taking of the subsequent statement testified that, while Brawley had been drinking and the odor of alcohol did emanate from his person, he appeared lucid and to understand what was going on. Their testimony was unequivocal that Brawley did not show any signs of intoxication, that he was completely responsive and coherent, and that there was no coercion or deception involved in the obtaining of the statement.

The test for voluntariness of both the waiver and statement are essentially the same in this case. When a custodial statement is challenged, the State has the burden of proving by a preponderance of the evidence that the statement was voluntarily given. *Baker* v. *State*, 299 Ark. 430, 711 S.W.2d 816 (1986). On appeal we make an independent determination of this issue considering the totality of the circumstances and affirm the trial court's ruling unless it is clearly wrong. *Fleming* v. *State*, 284 Ark. 307, 681 S.W.2d 390 (1984). In *Miranda* v. *Arizona*, 384 U.S. 436 (1966), the Supreme Court recognized the inherently coercive nature of custodial waivers and held that a suspect's waiver of rights is valid only if it is made voluntarily, knowingly, and intelligently. The voluntariness requirement is concerned with any sort of coercive or deceptive police activity. The

knowledge and intelligence requirements are concerned with the level of comprehension of the accused. Only if the " 'totality of the circumstances surrounding the interrogation reveals' both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Burin* v. *State*, 298 Ark. 611, 770 S.W.2d 125 (1989); *Moran* v. *Burbine*, 475 U.S. 412, at 421 (1986).

■ In our review of the totality of the circumstances, we defer to the trial court with respect to the credibility of witnesses. *Smith* v. *State*, 286 Ark. 247, 691 S.W.2d 154 (1985).

■ Brawley argues that he was so intoxicated that he does not recollect his statement at all nor does he recall signing the waiver. In a similar case, *Hunes* v. *State*, 274 Ark. 268, 623 S.W.2d 835 (1981), the appellant claimed he had taken drugs prior to the time he was interrogated and was unable to remember being questioned or signing the confession. We found the State's evidence that the appellant appeared to be lucid and understood his rights was sufficient and concluded that it was for the Trial Court to weigh the evidence and resolve the credibility of the witnesses. The testimony here suggests that Brawley was sober enough. There is no evidence of any sort of duress. We cannot say the Trial Court was wrong in refusing to suppress the statement.

Affirmed.

DUDLEY, J., concurs.

ROBERT H. DUDLEY, Justice, concurring. Arkansas R. Crim. P. 28.1(a) provides that an incarcerated defendant is to be tried within nine (9) months or released from incarceration. There is no provision in our Rules stating directly that an incarcerated person is entitled to be tried within one year or discharged absolutely. At least one of our decisions, however, suggests that the provision of Rule 28.1(c), requiring trial within one year of a person "held to bail, or otherwise lawfully set at liberty," applies as well to an incarcerated person. *Gooden* v. *State*, 295 Ark. 385, 749 S.W.2d 657 (1988).

Although Brawley is not "at liberty," the State's brief concedes he must be tried within one year unless there are excludable periods. I raise the issue here solely to suggest that our Committee on Criminal Practice may wish to consider reviewing

the Rules with a view toward suggesting a change to specify the period within which an incarcerated person must be tried or discharged.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
### NOVEMBER 25, 1991

819 S.W.2d 704

*Henry J. Swift* and *Kent J. Ruebens*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

PER CURIAM. The petition for rehearing is denied.

TOM GLAZE, Justice, concurring. I agree with the court's denial of appellant's petition for rehearing. However, appellant voices his concern that the court's opinion can be read to mean that, once a defendant requests a psychiatric evaluation, all delays in obtaining that evaluation are chargeable to the defendant for speedy trial purposes regardless of who caused the delays. I would not agree with such a proposition, and I believe a close look at the record dispels such a notion.

The state had twelve months to bring the appellant to trial, but appellant was tried sixteen months and nine days after his arrest and incarceration. Thus, the state had the burden of showing the delay was legally justified. *Gooden* v. *State*, 295 Ark. 385, 749 S.W.2d 657 (1988).

In its opinion, this court, citing Ark. R. Crim. P. 28.3(a), excluded the entire period it took for appellant to be evaluated. In so holding, the court rejected appellant's argument that his evaluation had been delayed through no fault of his and that the state should have been charged with the period of delay from the two dates he was not taken to his appointments in October 1988, until his evaluation was obtained in May 1989, or when the report was submitted in July 1989. The trial court found that the appellant did nothing to prevent his attending the two scheduled appointments in October 1988, but neither did the trial court find the state at fault. Appellant's position, however, is the period of delay was still chargeable to the state because it had the burden to show the delay was legally justified.

Appellant's argument assumes that he did nothing to delay his evaluation in this matter. I cannot agree. Appellant ignores the fact that the prosecutor, in February 1989, was the one who recognized that appellant's evaluation had been delayed, and the prosecutor petitioned well within the designated twelve-month

period (about nine months) for the trial court to appoint a private psychiatrist to evaluate appellant. In his petition, the prosecutor specifically mentioned the state's inability to have appellant evaluated at the George W. Jackson Mental Health Center and his concern that the speedy trial period could expire if action was not taken. The prosecutor offered that the state would pay the expense of an independent psychiatric evaluation. The trial court, in settling the record for appeal purposes, related in the following what occurred at the February 22, 1989 hearing on the prosecutor's petition:

> There was colloquy about who was responsible, why it was taking so long, what could be done and et cetera. And I believe I informed Mr. Swift and the prosecutor to look into the matter, to get it straightened out, to proceed with it, and that if he wasn't having any luck, to file a motion for habeas, and that I would rule on it promptly.

> Then he asked for a continuance, and I granted at that time the motion for private evaluation. There was never an order filed apparently. But the case was continued on defense motions at defense request for the term.

From the above, it is clear to me that the prosecutor petitioned the trial court in an attempt to show the state was not responsible for the delay in appellant's evaluation, and, in doing so, he actually sought a private evaluation to avoid any further delay. Appellant, on the other hand, moved for a continuance which was granted, thus, cutting off any further consideration of the prosecutor's petition. The appellant, strategically suspect, chose not to proceed further at the hearing held on the prosecutor's petition and the trial court was obviously left with the impression that both the state and the appellant would work matters out. If they could not, the trial court would expect appellant to file a habeas corpus petition, which the court would promptly rule on. Instead, appellant raised no speedy trial issue *until after trial* when he filed a motion for new trial.

The entire dispute over appellant's failure to obtain an evaluation could have been resolved at the February hearing if appellant had not chosen to ask for a continuance. Appellant cannot be expected to have it both ways, i.e., he cannot charge the state with the extended period of time after appellant missed his October 1988 appointments and at the same time frustrate the state's efforts to obtain appellant's evaluation. There was some confusion over whether appellant's continuance was until March or August 1989, but regardless of the length of time requested by

appellant, he simply did nothing related to an evaluation after the February hearing. While it is true the state has the burden to bring a defendant to trial within the twelve-month period required under Rule 28, the defendant cannot benefit from actions he takes that frustrate the state's efforts that are designed to achieve a speedy trial for the appellant. In my view, appellant's action at the February hearing did just that and he then chose to lie behind the log while time accrued past the required twelve-month period. The appellant should be charged with all the time that transpired from the February 22, 1989 hearing until the evaluation report was submitted on July 24, 1989.

This time alone, when excluded, brings appellant's trial date within the required twelve months. While I agree with the majority that sufficient excludable time exists in this case under Rule 28.3(a), I also believe that, in light of appellant's actions and inactions, such excluded time is warranted under Rule 28.3(h), which covers other periods of delay for good cause.

For the foregoing reasons, I concur with the court's decision denying appellant's request for rehearing.