Larry HULSEY *v.* Tom SMITHERMAN, Judge

CR 96-1441                                    943 S.W.2d 568

Supreme Court of Arkansas
Opinion delivered April 28, 1997

*Steven D. Oliver* and *Daniel D. Becker*, for petitioner.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for respondent.

DAVID NEWBERN, Justice. Petitioner Larry Hulsey was arrested for rape on November 2, 1994. He seeks a writ of prohibition directing the Garland Circuit Court to dismiss the charge. He contends his right to a speedy trial has been denied. After delays not at issue here, the Trial Court ordered Mr. Hulsey to the State Hospital for examination on November 21, 1995. Almost a year later, on November 14, 1996, the State Hospital report was presented to the Court. If, in calculating the one-year period prescribed in Ark. R. Crim. P. 28.1, the time it took to obtain the report is not excluded from the one-year period, Mr. Hulsey is entitled to the writ; if that time is excluded, he is not entitled to the writ. We hold the time is excluded, and thus we deny the writ.

On October 5, 1995, Mr. Hulsey notified the Trial Court of his assertion that he lacked the mental capacity to stand trial and that he would defend the charge on the basis of his inability to appreciate the criminality of his conduct or to conform his conduct to the law when the crime was committed. In conjunction with that notice, Mr. Hulsey moved to be examined at the State Hospital. That same date, the Trial Court entered an order that Mr. Hulsey be given a thirty-day evaluation at the State Hospital. The order provided that, if the State Hospital were unable to accept Mr. Hulsey immediately, the Director of the State Hospital should evaluate Mr. Hulsey at the Garland County Detention Center. On November 2, 1995, Mr. Hulsey moved that he be transported from the Department of Correction to the Garland

County Detention Center for an evaluation to be performed there on November 7, 1995. The motion was granted.

From reports filed with the Trial Court by Dr. Paul Deyoub on November 9 and November 20, 1995, it appears that Dr. Deyoub went to the Garland County Detention Center on November 7, 1995, for the purpose of evaluating Mr. Hulsey. According to the reports, Dr. Deyoub was unable to conduct the evaluation on account of Mr. Hulsey's refusal to cooperate. It appears that Dr. Deyoub approached Mr. Hulsey in his cell and found him lying on the floor pretending to be unconscious. Mr. Hulsey did not speak to the doctor or respond in any way to the doctor's entreaties that Mr. Hulsey participate in the evaluation. For twenty minutes, the doctor attempted to persuade Mr. Hulsey to cooperate, but Mr. Hulsey did not respond, except to open his eyes slightly every so often. The doctor then left Mr. Hulsey alone and returned thirty minutes later. Mr. Hulsey was still lying on the floor, but he had moved to a different place in his cell.

Dr. Deyoub said in his report that he did not believe that Mr. Hulsey's refusal to cooperate was the result of any mental illness. The doctor advised the Trial Court to commit Mr. Hulsey to the State Hospital if it found that an evaluation remained necessary. The doctor suggested that Mr. Hulsey would not cooperate unless the evaluation was performed at the State Hospital.

On November 21, 1995, the Trial Court ordered that Mr. Hulsey be taken to the State Hospital for a mental evaluation. As noted above, the period from that date forward is the one Mr. Hulsey argues is chargeable to the State and should not be excluded from the prescribed one-year period.

By January 1996, the evaluation ordered on November 21, 1995, had not been performed. On January 10, 1996, Mr. Hulsey moved for a continuance and stated that he had not completed his mental evaluation and that the trial date should be continued from January 17, 1996, the previously scheduled date, until after completion of the evaluation. The Trial Court granted the motion, reset the trial for July 24, 1996, and noted that the delay would be excluded for speedy-trial purposes.

On June 25, 1996, the Trial Court learned the examination had not occurred, and he entered another order on June 28, 1996, that Mr. Hulsey be committed to the State Hospital for a thirty-day evaluation.

By July 1996, the evaluation still had not been performed. Mr. Hulsey noted this in a motion for continuance filed on July 10, 1996. He requested that the trial be continued from July 24, 1996, the previously scheduled trial date, until after the completion of the evaluation. The Trial Court granted the motion on July 11, 1996, reset the trial for October 9, 1996, and excluded the delay for speedy-trial purposes.

On September 17, 1996, defense counsel sent a letter to the Division of Mental Health Services of the Department of Human Services inquiring about the status of the evaluation. The defense filed another motion for continuance on September 30, 1996, which stated that Mr. Hulsey remained in the Department of Correction waiting to be evaluated. The Trial Court granted the motion on October 1, 1996, and continued the trial from October 9, 1996, the previously scheduled date, to December 4, 1996. The Trial Court noted that the delay would be excluded for speedy-trial purposes. On October 29, 1996, Mr. Hulsey filed a "motion for speedy trial." Mr. Hulsey asked the Trial Court to grant him a speedy trial on the rape charge or to dismiss the charge with prejudice.

By November 1996, the evaluation remained unperformed. The Trial Court entered an order on November 5, 1996, directing the Assistant Director of the Division of Mental Health Services to appear on November 19, 1996, and show cause why the evaluation had not been completed.

The State Hospital filed a report with the Trial Court on November 14, 1996, which indicated that the State Hospital had conducted the evaluation of Mr. Hulsey on November 8, 1996, and determined that Mr. Hulsey was aware of the nature of the charges and the proceedings taken against him and was capable of cooperating effectively with an attorney in the preparation of his defense. The report further stated that Mr. Hulsey, at the time of the commission of the alleged offense, did not lack the capacity to

appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. The show-cause order was set aside.

■ The Trial Court held a hearing on November 19, 1996, in which Mr. Hulsey again moved to dismiss for lack of speedy trial. No evidence or testimony was presented to justify the delay in the mental evaluation. The Trial Court entered an order on November 20, 1996, denying Mr. Hulsey's motion to dismiss for lack of speedy trial.

According to Ark. R. Crim. P. 28.1(c),

> Any defendant charged after October 1, 1987, in circuit court and held to bail, or otherwise lawfully set at liberty, including released from incarceration pursuant to subsection (a) hereof, shall be entitled to have the charge dismissed with an absolute bar to prosecution if not brought to trial within twelve (12) months from the time provided in Rule 28.2, excluding only such periods of necessary delay as are authorized in Rule 28.3.

We apply the rule to incarcerated persons even though there is no provision stating that an incarcerated person is entitled to be tried within a year or have a charge dismissed. *See Brawley v. State,* 306 Ark. 609, 614, 816 S.W.2d 598, 601 (1991)(Dudley, J., concurring); *Gooden v. State,* 295 Ark. 385, 749 S.W.2d 657 (1988).

■ The initial twelve-month period ended on November 2, 1995. "When a defendant is not brought to trial within this twelve-month period, the State has the burden of showing the delay was legally justified." *Hufford v. State,* 314 Ark. 181, 183, 861 S.W.2d 108, 109 (1993). *See also Wallace v. State,* 314 Ark. 247, 862 S.W.2d 235 (1993).

Portions of this nearly two-and-one-half-year delay were not excluded and thus were charged against the State. Again, we are concerned only with whether the delay from November 21, 1995, to November 14, 1996, is to be excluded. In asserting that it has met its burden of demonstrating that this particular delay was to be excluded from the one-year period, the State relies solely on Ark. R. Crim. P. 28.3(a), which provides in relevant part as follows:

The following periods shall be excluded in computing the time for trial:

> (a) The period of delay resulting from other proceedings concerning the defendant, including but not limited to an examination and hearing on the competency of the defendant and the period during which he is incompetent to stand trial . . . .

Once a defendant has made a *prima facie* showing of a violation of Rule 28.1, the State bears the burden of demonstrating that there has been no violation because some of the time comprising the one year provided in the rule is to be excluded as "legally justified." *Wallace v. State, supra; Hufford v. State, supra.* The argument of the State in this case, however, is that Rule 28.3(a) states flatly that the time constituting a delay resulting from an examination and hearing on competency is to be excluded.

In *Brawley v. State,* 306 Ark. 609, 816 S.W.2d 598 (1991), it was argued that a delay of over nine months in getting a mental examination was attributable to the State and thus not to be excluded from the one-year period. The argument was that, although various appointments for examination were made for Mr. Brawley, who was incarcerated, transportation was not provided by the State and he missed the appointments. Mr. Brawley argued that, once it was shown that it was not his fault that he missed his appointments, the "burden shifted back" to the State. We referred to the "literal language" of Rule 28.3(a) and noted that Mr. Brawley had cited no authority supporting his argument.

Mr. Hulsey cites three cases in which we have dealt with delays related to mental evaluations of criminal defendants. *Mack v. State,* 321 Ark. 547, 905 S.W.2d 842 (1995); *Brawley v. State, supra; Hubbard v. State,* 306 Ark. 153, 812 S.W.2d 107 (1991). In each case we denied the relief sought. Mr. Hulsey distinguishes them solely on the basis that the delay was longer in this case than in the others cited. He quotes the following from the *Mack* case:

> We have previously taken pains to underscore that the State Hospital is independent of the judiciary and prosecuting attorney's office and, thus, "delays caused by its operation would not be subject to the same level of scrutiny as delays caused by the criminal justice system itself."

*Mack v. State,* 321 Ark. at 551, 905 S.W.2d at 844, *quoting Collins v. State,* 304 Ark. 587, 590, 804 S.W.2d 680, 681 (1991).
Mr. Hulsey argues the "scrutiny" to which we referred should be applied here and then cites the *Collins* case and our dismissal of Mr. Collins's argument that the delay was not his "fault" but was caused by renovations at the State Hospital.

In view of the manner in which we have applied Rule 28.3(a), and our characterization of the State Hospital's role in the process of determining the mental status of an accused, we need not agree or disagree with Mr. Hulsey's implication that the matter of "fault" is at issue. *Cf. Brawley v. State, supra,* (concurring opinion of Glaze, J., upon denial of rehearing). We must point out, however, that if fault, or perhaps comparative fault, were the issue we would have difficulty in getting beyond the fact that Mr. Hulsey could have had the requisite mental examination on November 7, 1995, had he chosen to cooperate with the examiner.

While we do not condone the State Hospital's delay in bringing about an examination of Mr. Hulsey after it was ordered by the Trial Court, we hold it was a delay, in the words of Rule 28.3(a), "resulting from other proceedings concerning the defendant" and thus was excluded in computing the time for trial.

Petition denied.